**JEW TEN, also known as George K. Jue, also known as Jue Gar King, also known as Chow Ka King, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 17625.**

United States Court of Appeals Ninth Circuit.

Sept. 8, 1962.

Joseph S. Hertogs and Fred Campagnoli, San Francisco, Cal., for petitioner.

Cecil F. Poole, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for respondent.

Before BARNES, and KOELSCH, Circuit Judges, and PLUMMER, District Judge.

BARNES, Circuit Judge.

This is a petition for judicial review of a final order of deportation entered against Jew Ten (hereinafter referred to as "petitioner") by the Immigration and Naturalization Service (hereinafter referred to as "respondent") pursuant to administrative proceedings under Section 242(b) of the Immigration and Nationality Act (8 U.S.C.A. § 1252(b)). The petition was timely filed. Service was properly made, and the deportation was stayed. This court has jurisdiction to review the order entered below under the provisions of Section 1105a of Title 8 United States Code Annotated, and Sections 1031–1042 of Title 5, United States Code Annotated.

The question here presented is whether respondent's order is erroneous as a matter of law.

The facts are not in dispute. They may be summarized as follows: Petitioner is an alien, a native and citizen of China, who was first lawfully admitted into the United States in 1919 as the lawful minor

son of a domiciled merchant. He last entered the United States at the Port of Honolulu, the then Territory of Hawaii, on August 10, 1950, at which time he was admitted as a lawful returning permanent resident in possession of a valid re-entry permit.

On February 15, 1954, petitioner was convicted of a conspiracy to assist other aliens to enter the United States in violation of the law. The district court, pursuant to the provisions of § 241(b) (2) of the Immigration and Nationality Act (8 U.S.C.A. § 1251(b) (2)), recommended to the Attorney General that petitioner "be not deported." This resulted in the provision of Subsection (a) (4) of § 1251 being inapplicable (conviction of a crime involving moral turpitude).

Despite this judicial recommendation, and the resulting inapplicability of § 1251 (a) (4), on April 3, 1954 respondent issued a warrant of arrest charging petitioner as being deportable under § 241 (a) (13)[1] of the Immigration and Nationality Act of 1952.

After an extensive hearing, the Special Inquiry Officer, in a decision dated July 18, 1955, sustained the charge and directed that petitioner be deported from the United States. This decision was affirmed by the Board of Immigration Appeals on December 20, 1955.

Petitioner does not set forth his specification of errors in conformity with the rules of this court. In his statement of of facts, however, he says:

"This petition for review was filed for the specific purpose of seeking a judicial determination as to whether the administrative decision is erroneous as a matter of law."

Thus, petitioner does not here assert that the record in no way supports respondent's decision; consequently, this court is not called upon to determine whether there is reasonable, substantial, or probative evidence in the record to support respondent's order. The issue presented, in petitioner's words, is:

"The Immigration and Naturalization Service erred in holding petitioner subject to deportation on the charge set forth in the warrant of arrest contrary to the recommendation of the District Court to the Attorney General that petitioner not be deported from the United States."

It is petitioner's contention that respondent is without jurisdiction or power to deport him because petitioner is entitled to the benefit of the district court's recommendation that he not be deported. The district court's recommendation was founded upon § 241(b) of the Immigration and Nationality Act of 1952, which, prior to enactment of the Narcotics Control Act of 1956, read:

"(b) The provisions of subsection (a) (4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States, or (2) if the court sentencing such alien for such crimes shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter."

1. This Subsection, 8 U.S.C.A. § 1251(a) (13), reads in pertinent part:
"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
\* \* \* \* \*

"(13) prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of law."

As one reads § 241(b), it seems fairly clear that the power of the sentencing court to recommend that a convicted alien not be deported is limited to those cases where an alien is convicted of an offense within the meaning of § 241(a) (4) [2] of the Act (8 U.S.C.A. § 1251(a) (4)). But, as read and applied by some courts, § 241(b) was not free from ambiguity. The ambiguity in the scope of the application of § 241(b) resulted from first, the vague and uncertain language (here acknowledged to be so by respondent) of § 241(a) (4), and secondly, because for a number of years sentencing courts made judicial recommendations against deportation in cases where aliens were convicted of a violation of the narcotics laws [3]—even though aliens convicted of violations of narcotics laws were specifically deportable under § 241(a) (11).

With this brief background in mind, suffice it to say that Congress was not happy with the interpretation given § 241 by the courts. Consequently, by § 301 (c) of the Narcotics Control Act of 1956 (70 Stat. 575) Congress amended § 241 (b) by adding the following sentence:

"The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a) (11) of this section."

The congressional intent of this amendment is clear from its history. In Conference Report No. 2546, the managers of the bill said:

"(3) It amended section 241(b) of that act by including additional language to state clearly that this provision does not permit judicial recommendation against deportation of an alien convicted of a narcotic offense. Clarification of this provision has been made desirable by reason of the decisions in United States ex rel. De Luca v. O'Rourke ([8 Cir.] 213 F.2d 759) and Ex Parte Robles-Rubio (D.C. 119 F.Supp. 610)." (2 U.S.Code Cong. and Admin. News '56, p. 3321.)

The 1956 amendment to § 241(b) is the basis for petitioner's contention in the case at bar. This amendment, contends petitioner, directly or indirectly amends § 241(b) to mean that judicial recommendations can now be made in all those classes of deportability enumerated in § 241(a) except when the deportation is ordered under § 241(a) (11).

This contention, we believe, to be untenable. While the intent of Congress may be clearer in the statute's legislative history than it is in the language of the statute itself, we do not believe § 241(b) can be given the meaning contended for by petitioner. As we read § 241(b), taking cognizance of its history, it can only mean that the sentencing court is limited to making recommendations in § 241(a) (4) convictions.

2. This section reads:
"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \*

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial."

3. This is pointed up in footnote 5 in Ex parte Robles-Rubio, N.D.Calif.1954, 119 F.Supp. 610, at page 613, which reads:
"5. Since 1922, when violation of the Jones-Miller Act was first made a deportable offense, the courts have possessed the power to recommend against the deportation of an alien convicted of violating that narcotic statute. \* \* \* And, when, in 1931, the violation of other narcotic statutes, including the Harrison Narcotics Act, was made a deportable offense, the power of the courts to recommend against deportation was made applicable to violators of these statutes. \* \* \* Thus for 30 years prior to the passage of the Immigration and Nationality Act of 1952, the courts have been making recommendations against deportation in narcotic cases."

This brings us to the case at bar. The district court here recommended that petitioner not be deported. Does this recommendation render respondent powerless—or without jurisdiction—to deport petitioner? For the reasons stated above, the answer would depend upon whether the case at bar was a proceeding to deport petitioner under § 241(a) (4). It was not. Hence, the district court's recommendation does not bar respondent from deporting petitioner, and respondent's final order of deportation must be affirmed.

Respondent did *not* charge petitioner as being deportable under § 241(a) (4); nor was § 241(a) (4) relied upon by respondent in the proceedings below. Respondent *did* charge and find a violation of § 241(a) (13).[4] In other words, respondent charged petitioner as being deportable under § 241(a) (13) because he had committed acts proscribed under that section; not with being deportable for the reason that he had been convicted of a crime within the purview of § 241(a) (4). As pointed out in marginal note 4, supra, the only significance attached to petitioner's conviction in the proceedings below was that the conviction had made it easier for respondent to prove that petitioner did in fact commit acts

proscribed by § 241(a) (13). And, though it is not required, a reading of the record shows that respondent's decision was well founded in fact.

Affirmed.

4.  The opinion of the Board of Immigration Appeals reads:
    "The deportation of the [petitioner] is sought under Section 241(a) (13) * * * in that prior to or at the time of any entry, he knowingly and for gain encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of law. * * * Under [Section 241(b)] a nondeportable status created by judicial recommendation is limited to deportation charges brought under Section 241(a) (4) * * * unless said recommendation is preserved by * * * the saving clause of the 1952 Act. * * * Since [the saving clause] is not applicable to the instant proceeding the judicial recommendation does not vitiate a charge laid under Section 241(a) (13). * * *
    " * * * As proof of the alleged unlawful acts the government relies on a transcript developed during [petitioner's] trial

on the indictment referred to above (Exs. 4, 5 and 114), the testimony of several Chinese aliens and some 182 exhibits consisting of visa files, affidavits and other evidentiary material.
"The extent of proof required to support the charges laid under Section 241(a) (13) is materially lessened by reason of [petitioner's] conviction in the United States District Court * * * for violation of Title 18 U.S.C. (Rev.) Section 271. * * * *"
The sole Conclusion of Law reached by the Special Inquiry Officer reads:
"1. That under Section 241(a) (13) * * * the [petitioner] is subject to deportation on the ground that prior to or at the time of any entry, he shall have knowingly and for gain encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of law."