**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 15 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARTURO SOLANO-RAMOS,

    Defendant - Appellant.

No. 99-1252

(D. Colorado)

(D.C. No. 98-CR-195-N)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **ANDERSON** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Arturo Solano-Ramos was convicted of illegal reentry into the United States after deportation, in violation of 18 U.S.C. § 1326(b)(2). On appeal,

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Solano-Ramos contends that the district court erred in denying his motion to dismiss the indictment, arguing that he was denied due process because he did not voluntarily and intelligently waive his right to appeal the immigration judge's deportation order. Pursuing this argument, he alleges that had he been allowed to appeal the deportation decision, he could have convinced the Board of Immigration Appeals to grant him an alternative to deportation based upon a previous state court judicial recommendation, or on other, unspecified grounds. Because Solano-Ramos fails to show that he was denied his right to appeal, we affirm the judgment of the district court.

**BACKGROUND**

Solano-Ramos is a native and citizen of Mexico. See R. Vol. 1, Doc 43 at 2. At age seven, he moved with his family to Albuquerque, New Mexico. See R. Vol. 3 at 8. After turning eighteen, defendant settled permanently in the United States. See id.

On June 13, 1990, the defendant was convicted in New Mexico state court of conspiracy to commit second degree murder. See R. Vol. 1, Doc. 43 at 3. This is an "aggravated felony" within the meaning of 8 U.S.C. § 1326(b)(2). [1] In its

---

[1] In a prosecution under 8 U.S.C. § 1326, a previously deported alien who subsequently reenters the United States without permission is subject to a

(continued...)

written judgment, the state court included a judicial recommendation against deportation (JRAD), which stated:

> Pursuant to Order of this Court filed on April 25, 1990 and pursuant to 8 USC § 1251(b)(4): The Immigration and Naturalization Service may not consider the conviction in this case as a basis for denying to Mr. Solano relief requested from the INS, or as a basis for deportation under 8 USC § 1251(a)(4). [2]

R. Vol. 1, Doc. 13, Attachment A at 2.

On October 18, 1996, following his release from imprisonment in New Mexico, the defendant was served with an INS Order to Show Cause and Notice of Hearing. The INS notice informed the defendant, in both English and Spanish, that he was "subject to deportation pursuant to . . . [s]ection 241(a)(1)(B) of the Immigration and Nationality Act (Act), as amended, in that you entered the United States without inspection." R. Vol. 1, Doc. 14, Ex. 1 at 3. After a deportation hearing, Immigration Judge David J. Cordova found, on the basis of the defendant's admissions, that (1) he was "deportable on the charge(s) in the Order to Show Cause," (2) he "has made no application for relief from deportation," and (3) he waived his right to appeal the deportation decision. R.

---

[1](...continued) substantial sentencing enhancement if his previous removal was "subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(2).

[2]In 1996, section 1251 was renumbered as 8 U.S.C. § 1227 and revised, inter alia, to provide for the deportation of aliens convicted of aggravated felonies. See 8 U.S.C. § 1227(a)(2)(A)(iii).

Vol. 1, Doc. 14, Ex. 2. On the basis of the decision of the immigration judge, a warrant of deportation was issued, ordering the deportation of defendant under section 241(a)(1)(B) of the Immigration and Nationality Act. See Vol. 1, Doc. 14, Ex. 3. Defendant was deported from the United States on October 29, 1996. See id.

On October 27, 1998, defendant was found in the United States. See R. Vol. 1, Doc. 43 at 3. He had not received permission from the Attorney General to reapply for admission to the United States. See id. Defendant was subsequently arrested and indicted for illegal reentry into the United States after deportation, in violation of 8 U.S.C. § 1326(a), (b)(2). See Vol. 1, Doc. 9 at 1.

Defendant filed a motion to dismiss the indictment in which he collaterally attacked his 1996 deportation, arguing that his deportation hearing had been fundamentally unfair because he did not voluntarily and intelligently waive his right to appeal. [3] Defendant also filed a second motion notifying the court that he intended to plead guilty if his motion to dismiss the indictment was denied. See R. Vol. 1, Doc. 15 at 1. The district court denied defendant's motion to dismiss the indictment, declining to hold a hearing. Defendant then filed an Offer of

---

[3]Defendant also argued that he was being treated disparately by being subjected to the possibility of receiving an enhanced penalty under 8 U.S.C. § 1326(b)(2) due to his prior aggravated felony conviction. However, at the hearing on defendant's motion, defendant's counsel withdrew that argument. See R. Supp. Vol. 1 at 35-36.

Proof in support of his motion to dismiss, indicating that, had the court held a hearing on his motion, he would have presented evidence that the government was unable to produce tape recordings of his deportation hearing.        See R. Vol. 1, Doc. 20 at 2.

Defendant's motion to dismiss the indictment was revived when the United States District Court judge assigned to the case issued an order recusing himself and reinstating the motion for consideration by another judge.  The new judge ordered an evidentiary hearing on defendant's motion to dismiss the indictment. In that hearing, the government presented evidence that its inability to produce the tape recording of defendant's deportation hearing was the result of a tape recorder malfunction.  The government also offered the testimony of Immigration Judge Cordova, who described in detail his routine practice in deportation proceedings of advising all detainees of their rights, specifically including the right to appeal an adverse decision.  The government offered as exhibits the Order to Show Cause [4] served on defendant on October 18, 1996, ten days before his October 28 deportation hearing, as well as Judge Cordova's written decision, on which he had circled the word "waived" next to the inquiry about defendant's appeal.        See R.

---

[4]The Order to Show Cause, see R. Vol. 1, Doc. 14, Ex. 1, includes:  (1) a description of the charge alleged by the government, see id. at 1, (2) a detailed English and Spanish explanation of defendant's rights, including the right to appeal an adverse deportation decision, see id. at 2, and (3) an explanation of the consequences potentially flowing from the deportation hearing, see id.

Vol. 1, Doc. 14, Ex. 2 at 1. While Judge Cordova admitted that he could not remember exactly what occurred at the defendant's deportation hearing, see R. Supp. Vol. 1 at 15, he testified that the previously described procedure was his normal practice, and that he followed it every day, see id. at 14-15. He also emphasized that Solano-Ramos was deported "because he entered without inspection," and not because of his previous aggravated felony conviction. Id. at 24.

After reviewing the evidence, the district court denied defendant's motion, stating:

> It is unfortunate that the tape is missing, but – and that requires that we hear and judge the validity of secondary evidence concerning what happened at the proceeding.
>
> I do not believe it is a question of the immigration judge taking away my authority or the defendant's authority to adjudicate this case. I think it's a question of whether I believe the immigration judge. And no serious doubt has been cast on the testimony, which is that there is a practice that . . . is followed in these cases in case after case, a consistent practice that this judge follows. The documentation demonstrates that there was an adequate advisement of rights.

Id. at 34-35. The court further found that, "even had [Solano-Ramos] appealed the immigration law judge's decision, he still would have been deported for entering the United States without inspection," and that it was thus unlikely that he would be able to demonstrate prejudice. Id. at 35. Defendant subsequently pleaded guilty to the charge alleged in the indictment.

-6-

## DISCUSSION

On appeal, Mr. Solano-Ramos challenges the district court's denial of his motion to dismiss the indictment, renewing his argument that his deportation proceeding denied him his constitutional right to due process. "A collateral attack on the constitutional validity of deportation proceedings underlying a § 1326 criminal prosecution is a mixed question of law and fact" that we review de novo. See United States v. Valdez, 917 F.2d 466, 468 (10th Cir. 1990).

For a defendant to collaterally challenge a deportation hearing in an 8 U.S.C. § 1326 prosecution, the defendant must show that the deportation hearing was fundamentally unfair and deprived the alien to the right of judicial review. See United States v. Meraz-Valeta, 26 F.3d 992, 998 (10th Cir. 1994) (applying requirements of 8 U.S.C. § 1326).

Defendant first claims that he did not knowingly and voluntarily waive his right to appeal his deportation order, and that he was therefore deprived of the right to judicial review. Nothing in the record supports the argument. Defendant presented no affidavits or witnesses at the hearing on his motion to dismiss the indictment. Instead, defendant's entire argument is that "because the government cannot produce the record of the deportation hearing, it is impossible to evaluate the voluntariness of Mr. Solano-Ramos's waiver of his right to appeal." Appellant's Br. at 5. Rather than prove that he was denied his right to appeal,

defendant would essentially have us reverse the burden of proof and require that the government demonstrate that he knowingly waived his right.

However, to presume that defendant's waiver is invalid until the government demonstrates otherwise "ignore[s] another presumption deeply rooted in our jurisprudence:  the 'presumption of regularity' that attaches to final judgments."  Parke v. Raley , 506 U.S. 20, 29 (1992).  As the Supreme Court stated:  "Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied equally to other forms of collateral attack."  Id. at 29-30 (internal citations omitted).  Therefore, in Solano-Ramos's collateral attack on his deportation proceedings, he must overcome the presumption that his deportation proceedings were conducted in a valid manner.

It is undisputed that prior to defendant's deportation hearing he was served a copy of the Order to Show Cause.  This document informed the defendant that he had the right to appeal the decision of the immigration judge if he was unsatisfied with it.  Judge Cordova testified that at deportation hearings his unvarying practice is to inform each individual of the right to appeal and that they may waive that right.  See R. Supp. Vol. 1 at 13.  The Decision of the Immigration Judge form signed by Judge Cordova indicates that the defendant waived his appeal rights.  Furthermore, having previously been deported twice, once in 1991 and again in 1992,  see R. Vol. 3 at 6-7, Solano-Ramos had some

degree of familiarity with deportation proceedings. In light of the evidence in the record, we conclude that the defendant has failed to meet his burden of proving that he was denied his right to judicial review.

This holding moots Solano-Ramos's argument that, had he not been denied his right to appeal, he could have persuaded the Board of Immigration Appeals not to deport him. However, even assuming arguendo that we reached this argument, we agree with the district court that defendant would have been deported anyway because he entered the United States without inspection. [5]

The judgment is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[5]The 1990 state court JRAD, which prohibited the INS from deporting Solano-Ramos on the basis of his aggravated felony conviction, did not prevent the INS from deporting him, as it did, for entering without inspection. Furthermore, notwithstanding the JRAD, the INS could have considered this aggravated felony conviction, his other criminal convictions, and his previous immigration violations in denying him discretionary relief from deportation, had he applied for such relief. See Hassan v. INS, 66 F.3d 266, 269 (10th Cir. 1995).